UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DARYL RHODES,<br><br>     Plaintiff,<br><br> v.<br><br>CITY OF KING COUNTY, et al.,<br><br>     Defendants. | Case No. C17-56-JLR-JPD<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION

Plaintiff Daryl Rhodes is a county prisoner who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against Seattle Police Officer Christopher Myers and the City of Seattle. He brings constitutional claims for unlawful search and seizure, false arrest and imprisonment, excessive force, emotional distress, and defamation. Dkt. 11 (2d Am. Compl.). He seeks $12.6 million in damages. *Id.*

Defendants have moved for summary judgment. Dkt. 24; *see also* Dkt. 27 (*Rand* warning). Instead of filing a response with the Court, Mr. Rhodes sent an unsigned response directly to counsel for defendants, which counsel then filed with the Court. Dkt. 30-1. Although Mr. Rhodes's response was not properly filed and was unsigned in violation of Federal Rule of

REPORT AND RECOMMENDATION - 1

Civil Procedure 11(a), the Court will consider the legal arguments made therein; however, it will not consider his factual assertions, which are not properly supported as required by Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(c)(1) (requiring that the party asserting a fact must support that fact with materials in the record, including depositions, documents, affidavits, or declarations); Fed. R. Civ. P. 56(e) (providing that if a party fails to properly dispute a fact, the court may consider the fact undisputed); *see also* Dkt. 27 (defendants' *Rand* warning informing plaintiff what he was required to do to oppose their motion for summary judgment).

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that defendants' motion for summary judgment be GRANTED.

## II.   FACTUAL BACKGROUND

On September 20, 2014, Officer Myers was on uniformed patrol alone in a marked Seattle Police Department patrol vehicle near Cal Anderson Park in Seattle's Capitol Hill neighborhood, an area known for narcotics use and transactions. Dkt. 25 (Myers Decl.) at ¶ 5. At approximately 3:20 p.m., Officer Myers was patrolling northbound on Nagle Place, which forms the western boarder of the park. *Id.*; *see also* Dkt. 26-2 at 1 (Map of Area). From his vehicle, Officer Myers observed an unidentified male cross Nagel Place from the park and contact two people who were later identified as Mr. Rhodes and his girlfriend, Beth Gallacci. Dkt. 25 at ¶ 6; Dkt. 26-1 (Rhodes Dep.) at 5. Officer Myers observed the unidentified male hand what appeared to be paper currency to Mr. Rhodes, and he observed Mr. Rhodes place a small object in the palm of the male's open hand. Dkt. 25 at ¶ 6. Based on his training and experience, Officer Myers believed that he had witnessed a possible illegal narcotics transaction. *Id.* The suspected transaction was captured on Officer Myers's patrol vehicle video camera. Dkt. 28 at Ex. 3 (Video Recording).

Officer Myers stopped his vehicle next to the three suspects and asked the unidentified male what was in his hand. Dkt. 25 at ¶ 7. The male replied, "It's weed," and held out his hand to show the officer. *Id.* Officer Myers saw a small bundle of leafy green substance, which appeared to be marijuana. *Id.* Officer Myers requested backup and exited his vehicle to detain the three subjects and further investigate the incident. *Id.* at ¶ 8. The three subjects complained about being stopped, stating that marijuana was legal. *Id.* Officer Myers explained that it was legal to possess and use marijuana, but it was illegal to deal it on the streets. *Id.*

Officer Myers, recognizing that he was the only officer at the scene and that there were three suspects whom he had not searched and was unaware of whether or not they possessed weapons, directed the suspects to the front of his vehicle and ordered them to place their hands on the hood of his vehicle where he could see them. *Id.* at ¶ 9. All three complied initially. *Id.* But then Mr. Rhodes and Ms. Gallacci removed their hands from the hood of the vehicle. *Id.* at ¶ 10. Officer Myers radioed for his backup to speed up their response. *Id.*

Parts of the events that transpired next were captured on video cameras from three patrol vehicles on the scene. Dkt. 31 at Ex. 2 (Officer Myers's Vehicle Recording), Ex. 3 (Sergeant Dietrich's Vehicle Recording), Ex. 4 (Third Police Vehicle Recording). Mr. Rhodes began to walk away from the vehicle. Dkt. 25 at ¶ 10; *see also* Dkt. 31, Ex. 2 at 00:18 – 00:20. Officer Myers grabbed Mr. Rhodes's left arm and shoulder to stop him and escort him back to the vehicle. Dkt. 25 at ¶ 11; *see also* Dkt. 31, Ex. 2 at 00:20 – 00:27. He pressed Mr. Rhodes against the side of the vehicle and attempted to gain control of Mr. Rhodes's arms to handcuff him. Dkt. 25 at ¶ 11. Mr. Rhodes raised his arms and said, "I'm not resisting." *Id.*; Dkt. 31, Ex. 2 at 00:36. Officer Myers could feel Mr. Rhodes tensing his arms and leaning into the officer to prevent the handcuffing. Dkt. 25 at ¶ 11. As Mr. Rhodes's resistance escalated, Officer Myers

REPORT AND RECOMMENDATION - 3

increased the amount of force he was employing to overcome the resistance and handcuff Mr. Rhodes.  *Id.*  At some point while Officer Myers was occupied with Mr. Rhodes, the unidentified male left the area.  *Id.*

While Officer Myers struggled with Mr. Rhodes, Ms. Gallacci approached and punched the officer in the head and shoulder with a closed fist.  *Id.* at ¶ 12.  She approached two more times, scratching his forearm, head, and neck.  *Id.*  Officer Myers then punched Ms. Gallacci in the face to stop her from attacking him and to get her to back away.[1]  *Id.*

Officer Myers got Mr. Rhodes in a body wrap and unsuccessfully attempted to trip him to the ground in order to gain control and handcuff him.  *Id.* at ¶ 14.  Mr. Rhodes twisted around to face Officer Myers and clawed the officer's face, gouging his cheek.  *Id.*  Officer Myers backed away, punched Mr. Rhodes in the face between one and five times, used a knee strike to Mr. Rhodes's torso, and then pulled Mr. Rhodes to the ground to try to control him.  *Id.*; Dkt. 26-1 at 7-8 (Rhodes Dep.); Dkt. 31, Ex. 3 at 00:07 – 00:16.

Seattle Police Department Sergeant Dietrich arrived as backup and grabbed one of Mr. Rhodes's arms in order to gain control and handcuff him.  Dkt. 25 at ¶ 15; *see also* Dkt. 31, Ex. 4 at 00:07.  Ms. Gallacci continued to interfere by approaching the fighting men and refusing to comply with police commands to back away.  Dkt. 25 at ¶ 15; Dkt. 31, Ex. 2 at 1:05; Dkt. 31, Ex. 3 at 00:20 – 1:02.  Sergeant Dietrich removed his pepper spray from his utility belt and warned Ms. Gallacci that he would use it if she did not stay back.  Dkt. 25 at ¶ 15; Dkt. 31, Ex. 3 at 00:20.  After other officers arrived at the scene to assist with Ms. Gallacci, Sergeant Dietrich and Officer Myers were able to handcuff Mr. Rhodes.  Dkt. 25 at ¶ 15; Dkt. 31, Ex. 3 at 1:43;

---

[1] The video recording shows Ms. Gallacci approach Officer Myers and Mr. Rhodes, who are struggling off camera, but it does not show her contact with Officer Myers.  Dkt. 31, Ex. 2 at 00:32 – 00:56.

REPORT AND RECOMMENDATION - 4

Dkt. 31, Ex. 4 at 00:26 – 00:52. Seattle Fire Paramedics treated the wound on Officer Myers's face before taking him to Harborview Medical Center for additional treatment. Dkt. 25 at ¶ 16.

After Mr. Rhodes was taken into custody, Officer Myers was considered a victim of an assault and therefore played no further role in the investigation other than to write his officer and use of force statements. *Id.* at ¶ 17.

King County Prosecutor's Office did not file criminal charges against Mr. Rhodes for Assault 3 until September 16, 2016. Dkt. 26-4. A King County Superior Court judge determined that there was probable cause to arrest Mr. Rhodes for Assault 3 upon Officer Myers. Dkt. 26-5. Mr. Rhodes failed to appear for his arraignment and a bench warrant was issued for his arrest on September 29, 2016. Dkt. 26-6. On April 3, 2017, the Assault 3 charge was dismissed without reaching the merits because the court determined that the prosecutor's delay in filing the charges prejudiced Mr. Rhodes's opportunity to defend himself. Dkt. 26-7.

### III.    LEGAL STANDARDS

A.    Summary Judgment

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden

REPORT AND RECOMMENDATION - 5

by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the nonmovant lacks the quantum evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party bears the burden at trial, it can meet its initial burden by presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party; the evidence presented must establish beyond controversy every essential element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 248; *see also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015).

B.   <u>Section 1983 Claims</u>

To sustain a § 1983 civil rights claim, a plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was

proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

IV.     DISCUSSION

Defendants move for summary judgment on Mr. Rhodes's claims that (1) Officer Myers unlawfully stopped him, (2) Officer Myers falsely arrested and imprisoned him, (3) Officer Myers used excessive force, (4) Officer Myers inflicted "intense emotional distress," (5) Officer Myers is liable for defamation, and (5) the City of Seattle violated his constitutional rights. Defendants further argue that to the extent Mr. Rhodes's complaint could be construed as bringing claims under state law, the Court should decline to exercise supplemental jurisdiction. As discussed below, the Court agrees that defendants are entitled to summary judgment.

A.    Unreasonable Search and Seizure Claims

The Fourth Amendment right to be secure from unreasonable searches and seizures "applies to all seizures of the person," including initial and brief seizures falling short of a traditional arrest. *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). Such seizures, however, do not violate the Fourth Amendment "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Berber-Tinoco*, 510 F.3d at 1087 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot"); *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185

REPORT AND RECOMMENDATION - 7

(2004) ("[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further.").

To determine whether a seizure was justified by a reasonable suspicion, the Court must "consider whether, in light of the totality of the circumstances, the officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968). The "totality of the circumstances" may include an officer's "objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of law-breakers." *Berber-Tinoco*, 510 F.3d at 1087 (quotation omitted).

Defendants argue that Mr. Rhodes's unreasonable search and seizure claims fail because Officer Myers witnessed what he believed to be a drug transaction, and therefore he had a reasonable suspicion to stop Mr. Rhodes. Dkt. 24 at 12. The Court agrees. The events occurred in an area known for narcotics transactions. Dkt. 25 at ¶ 5. Officer Myers submitted a declaration attesting that he observed the unidentified male give what appeared to be money to Mr. Rhodes in exchange for a small object, which was later identified as marijuana. Dkt. 25 at ¶¶ 6-7; *see also* Dkt. 28 at Ex. 3. During his deposition, Mr. Rhodes admitted that an officer observing this interaction could have believed that a transaction occurred. Dkt. 26-1 at 2. Considering the totality of the circumstances, the Court concludes that Officer Myers had a particularized and objective basis for suspecting an unlawful drug transaction had occurred.

Mr. Rhodes claims that Officer Myers lied and that no money was exchanged. Dkt. 11 at 5; Dkt. 30-1 at 3-4. He points to the Superform, which indicates that no cash was taken into

REPORT AND RECOMMENDATION - 8

1  evidence. *See* Dkt. 26-4 at 7. This form, however, is insufficient to create a genuine issue of

2  material fact regarding what Officer Myers believed he saw. At most, it suggests that Officer

3  Myers may have been mistaken regarding the exchange of money, but this does not defeat his

4  reasonable suspicion. *See United States v. Dorais*, 241 F.3d 1124, 1131 (9th Cir. 2001) (mistake

5  of fact did not defeat officers' reasonable suspicion). Accordingly, defendants are entitled to

6  summary judgment on Mr. Rhodes's unreasonable search and seizure claims.

7  B.   False Arrest and Imprisonment Claims

8      A claim for unlawful arrest or imprisonment is cognizable under § 1983 as a violation of

9  the Fourth Amendment, provided the arrest was without probable cause or other justification.

10 *Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993); *Norse v. City of Santa Cruz*, 629 F.3d 966,

11 978 (9th Cir. 2010) (plaintiff has burden of establishing lack of probable cause). "Probable

12 cause exists when the facts and circumstances within the officer's knowledge are sufficient to

13 cause a reasonably prudent person to believe that a crime has been committed." *Lassiter v. City*

14 *of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91

15 (1979)).

16     Defendants argue that there was probable cause to arrest Mr. Rhodes for assaulting

17 Officer Myers. Dkt. 24 at 13-14. A person is guilty of Assault 3 when he or she assaults a police

18 officer who was performing official duties at the time of the assault. RCW 9A.36.031(1)(g).

19 Officer Myers's declaration amply supports the conclusion that there was probable cause to

20 arrest Mr. Rhodes for assault. Dkt. 25 at ¶¶ 10-17. In addition, a King County Superior Court

21 judge determined that there was probable cause to arrest Mr. Rhodes. Dkt. 26-4; *see also Illinois*

22 *v. Gates*, 462 U.S. 213, 236 (1983) (probable cause determination by judge entitled to

23 deference).

REPORT AND RECOMMENDATION - 9

1    Mr. Rhodes argues that there was no probable cause for his arrest because there was no
2    drug transaction, he was never charged with a drug transaction, and the assault case was
3    dismissed at trial. Dkt. 30-1 at 3-4. As discussed above, however, Officer Myers lawfully
4    stopped Mr. Rhodes to investigate the suspected drug transaction. During the lawful stop, Mr.
5    Rhodes refused to comply with Officer Myers's verbal commands to keep his hands on the
6    vehicle, and the situation escalated from there with Mr. Rhodes allegedly assaulting Officer
7    Myers. Whether or not there was a drug transaction does not affect whether there was probable
8    cause to arrest Mr. Rhodes for the assault. Moreover, the Assault 3 case was dismissed because
9    of the prosecutor's delay in bringing the case, which does not undermine the probable cause
10   determination. The undisputed evidence, when viewed in Mr. Rhodes's favor, establishes
11   probable cause for his arrest and imprisonment. Defendants' motion for summary judgment
12   should be granted as to these claims.

C.   Excessive Force Claim

Defendants argue that Mr. Rhodes's excessive force claim is barred by qualified immunity. The doctrine of qualified immunity protects government officials from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 134 S. Ct. 3, 4-5 (2013) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent prongs: (1) whether the

officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. Cnty. of L.A.*, 797 F.3d 654, 663 (9th Cir. 2015) (citing *Pearson*, 555 U.S. at 232). Either prong may be considered first. *Id.* (citing *Pearson*, 555 U.S. at 236). In this case, the Court will begin with the first prong.

The Fourth Amendment prohibits the unreasonable use for force by law enforcement officers in the course of an arrest. *Graham v. Connor*, 490 U.S. 386 (1989); *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005). "[O]fficers may only use such force as is 'objectively reasonable' under the circumstances." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (citing *Graham*, 490 U.S. at 397). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (quotation omitted).

To determine whether the force used was objectively reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* In evaluating the nature and quality of the intrusion, the Court considers "the type and amount of force inflicted" during the arrest. *Jackson*, 268 F.3d at 651-52 (quoting *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994)). With respect to the government's interests, the Court may consider such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

REPORT AND RECOMMENDATION - 11

1  others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

2  *Graham*, 490 U.S. at 396.

3  Viewing the evidence in Mr. Rhodes's favor, the Court concludes that no reasonable

4  juror could find that Officer Myers's use of force was objectively unreasonable given the totality

5  of the circumstances.  Officer Myers was a single officer confronting three suspects who may

6  have been involved in an illegal sale of marijuana.  Officer Myers did not have an opportunity to

7  search the suspects, and thus he did not know whether they were armed.  Although the suspects

8  initially complied with Officer Myers's command to put their hands on the patrol vehicle, Mr.

9  Rhodes and Ms. Gallacci took their hands off the vehicle and ignored further verbal commands

10 from Officer Myers. Dkt. 25 at ¶¶ 9-10.  When Mr. Rhodes started to walk away, Officer Myers

11 grabbed his left arm and shoulder to stop him, and pressed him against the side of the patrol

12 vehicle in an effort to gain control of his arms and handcuff him.  *Id.* at ¶ 11.  This low level use

13 of force was objectively reasonable given that Officer Myers was outnumbered by suspects who

14 had not been searched for weapons and who were not obeying his verbal commands.

15 Instead of complying with Officer Myers's verbal instructions to put his hands back on

16 the vehicle, Mr. Rhodes raised his arms in the air and said, "I'm not resisting."  *Id.*  Despite Mr.

17 Rhodes's claim that he was not resisting, he tensed his arms and leaned into Officer Myers to

18 prevent Officer Myers from handcuffing him.  *Id.*  Things quickly escalated, and over the next 30

19 seconds, Officer Myers and Mr. Rhodes fought while Ms. Gallacci hovered nearby and

20 occasionally stepped in to attack Officer Myers.  *See* Dkt. 31, Ex. 2 at 00:36 – 01:05; Dkt. 31,

21 Ex. 3 at 00:07 – 00:20.  Officer Myers punched Mr. Rhodes up to five times in the face and used

22 a knee strike to Mr. Rhodes's torso before being able to bring him to the ground and eventually

23 handcuff him with the aid of Detective Dietrich. Dkt. 25 at ¶¶ 13-15; Dkt. 26-1 at 7-8.  During

REPORT AND RECOMMENDATION - 12

the altercation, Officer Myers suffered an injury to his face. Dkt. 25 at ¶¶ 14, 16. Mr. Rhodes testified during his deposition that he suffered a "scratch" on his lip and that his "rib hurt a little bit." Dkt. 26-1 at 7-8.

Considering the totality of the circumstances, including the fact that Officer Myers was being assaulted by two suspects who had ignored his verbal commands, his use of force, which resulted in minimal injuries to Mr. Rhodes, was objectively reasonable. Because Officer Myers did not violate Mr. Rhodes's Fourth Amendment rights, the Court need not address the second prong of the qualified immunity analysis. Defendants are entitled to summary judgment on this claim.

D.  Emotional Distress Claim

Under federal law, mental and emotional distress caused by a constitutional violation are compensable under § 1983. *Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Alexander v. City of Menlo Park*, 787 F.2d 1371, 1376 (9th Cir. 1986) ("Harm due to mental and emotional distress is clearly compensable under 42 U.S.C. § 1983.") (internal quotations and citations omitted). Emotional distress alone, however, does not establish an independent constitutional violation. *See, e.g.*, *Taylor v. Cnty. of San Bernadino*, No. 09-1829, 2011 WL 4529465, at *6 (C.D. Cal. Apr. 12, 2011) ("The County is correct that there is no federal constitutional tort of mental or emotional distress."); *Davis v. Folsom Cordova Unified Sch. Dist.*, No. 15-1714, 2015 WL 6821278, at *3 n. 4 (E.D. Cal. Nov. 6, 2015). As discussed, defendants are entitled to summary judgment on Mr. Rhodes's constitutional claims, and therefore his emotional distress claim also must fail.

REPORT AND RECOMMENDATION - 13

E.     Defamation Claim

As defendants argue, "defamation itself does not establish a cause of action under [§ 1983]." *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976). Courts, however, have recognized "defamation-plus" claims, which require "an allegation of injury to a plaintiff's reputation from defamation accompanied by an allegation of injury to a recognizable property or liberty interest." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 444 (9th Cir. 2010). To prevail on a "defamation-plus" claim, a plaintiff must establish (1) that the injury to reputation was inflicted in connection with a federally protected right; or (2) that the injury to reputation caused the denial of a federally protected right. *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999). There is no evidence before the Court to support a defamation-plus claim, and summary judgment should be granted in defendants' favor on this issue.

F.     *Monell* Claim Against the City of Seattle

A local government unit or municipality can be sued as a "person" under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bd. of the Cnty. Comm'rs of Bryant Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). Moreover, '[l]ike individual state officials, municipalities are only liable under Section 1983 if there is, at minimum, an underlying constitutional tort." *Johnson v. City of Seattle*, 474 F.3d 634, 638-39 (9th Cir. 2007). As defendants argue, Mr. Rhodes has not identified a municipal policy or custom that injured him, and he has not established an underlying constitutional tort. Defendants are entitled to summary judgment on this claim.

G.   Supplemental Jurisdiction

Federal courts have supplemental jurisdiction to consider state-law claims when they are "so related" to the federal claims that they "form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The exercise of supplemental jurisdiction is designed to promote "judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). However, when all federal claims have been dismissed, the interests promoted by supplemental jurisdiction are no longer present, and a court may decline to exercise jurisdiction over state-law claims. 28 U.S.C. § 1367(c); *Carnegie-Mellon*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). It is unclear whether Mr. Rhodes is attempting to bring any state-law claims. Regardless, because the Court recommends dismissal of Mr. Rhodes's federal claims, the Court should decline to exercise supplemental jurisdiction over any state-law claims and should dismiss them without prejudice.

V.   CONCLUSION

The Court recommends that defendants' motion for summary judgment, Dkt. 24, be GRANTED, plaintiff's federal constitutional claims be DISMISSED with prejudice, and any state-law claims be DISMISSED without prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **February 28, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for

REPORT AND RECOMMENDATION - 15

consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 2, 2018.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

Dated this 7th day of February, 2018.

*James P. Donohue*

JAMES P. DONOHUE
Chief United States Magistrate Judge